Susan DUNCAN

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services.

Civ. No. 90–5324.

United States District Court, E.D. Pennsylvania.

Feb. 5, 1992.

Steven Masters, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Dorothea J. Lundelius, Sp. Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM/ORDER

LOUIS H. POLLAK, District Judge.

Plaintiff has brought an action under 42 U.S.C. § 405(g) to review the final decision of the Secretary of Health and Human Services ("Secretary") denying her claim for supplemental security income ("SSI") provided under Title XVI of the Social Security Act. Plaintiff originally applied for SSI on October 8, 1987. The application was denied on December 10, 1987 and upon reconsideration on February 3, 1988. Plaintiff reapplied for SSI on May 25, 1988. This second claim was denied on August 8, 1988 and upon reconsideration on August 19, 1988. The case was reviewed by an Administrative Law Judge ("ALJ") on April 26, 1989. The ALJ issued an order dated September 29, 1989 denying the May 25, 1988 application for SSI. On June 15, 1990, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Secretary.

Presently before this court are the parties' cross-motions for summary judgment. United States Magistrate Judge Peter B. Scuderi reviewed the arguments of the parties and issued a Report and Recommendation dated August 1, 1991 recommending that defendant's motion be granted and plaintiff's denied. On August 16, 1991, plaintiff filed objections to the Magistrate's Report and Recommendation. This court must now "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (1991). "[T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate ... [and] may also receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

The motions of the parties present three major issues:

1) Whether substantial evidence supports the ALJ's finding that plaintiff's impairment does not meet the listing in 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 3.02–.03 (1991), which sets the criteria for disability due to asthma?

2) Whether substantial evidence supports the ALJ's finding that plaintiff has the residual functional capacity to perform substantial gainful employment?

3) Whether plaintiff's October 8, 1987 application should have been considered reopened by the ALJ so that prior test results could be considered and disability determined as of October 8, 1987?

Since plaintiff's objections to the Magistrate's Report and Recommendation concern all three of these issues, each will be addressed in turn.

It should be noted that the parties agree on the procedural guidelines controlling the ALJ's initial consideration of this matter and on the standard of judicial scrutiny to which this court is now bound on review. Under the medical-vocational regulations, as promulgated by the Secretary, a sequential five-step test is to be utilized to evalu-

ate disability claims. 20 C.F.R. § 416.920 (1981). Under step one, it is determined whether the claimant is working. If the claimant is not working, the test proceeds to step two. Under step two, the claimant's impairment is scrutinized. If the claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. If there is a severe impairment, the test proceeds to step three.

Under step three, the listing of impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 is consulted to ascertain whether claimant's impairment meets or exceeds any of the conditions specified therein. If it does, a finding of disabled is directed. Otherwise, the test proceeds to step four. Under step four, it is determined whether the claimant retains the residual functional capacity to perform past relevant work. If the claimant has this capability, a finding of not disabled is directed. If the claimant cannot perform the type of work that he or she previously engaged in, the test proceeds to the last step. Under step five, the claimant's residual functional capacity, age, education and past work experience are considered to determine whether he or she can perform other work which exists in significant numbers in the national economy. If the claimant is unable to perform such other available work a finding of disabled is directed.

Once the above test is applied to the facts and a decision is reached by the Secretary, the district court's review is limited to a determination as to whether the Secretary's decision is supported by substantial evidence. *Monsour Medical Center v. Heckler,* 806 F.2d 1185, 1190–91 (3d Cir. 1986), *cert. denied,* 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 373 (1987); 42 U.S.C. § 405(g) (1988). The substantial evidence test does not give the district court license merely to rubber-stamp the Secretary's decision. A meaningful review of the pleadings and the entire record must be performed. *Id.* "Substantial evidence is such relevant evidence as a reasoning mind

might accept as adequate to support a conclusion." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981).

> The test requires that the evidence be substantial after the reviewing court takes into account whatever in the record fairly detracts from its weight. Thus, the evidence must be sufficient to support the conclusion of a reasonable person after considering the evidentiary record as a whole, not just the evidence that is consistent with the agency's finding.

*Monsour Medical Center v. Heckler,* 806 F.2d at 1190 (citations omitted).

Overall, however, the test is deferential in nature. All agency inferences supported by substantial evidence must be upheld, even when the reviewing court, acting *de novo,* might have reached a different conclusion. *Id.* at 1190–91. "This court's role is not to impose its own interpretation of the ... regulation, but instead to defer to the Secretary's position so long as it is reasonable." *Butler County Memorial Hosp. v. Heckler,* 780 F.2d 352, 355 (3d Cir.1985) (citing *Presinzano v. Hoffman La Roche, Inc.,* 726 F.2d 105, 111 (3d Cir. 1984)).

### A.

■ The first issue to be addressed is whether substantial evidence supports the ALJ's finding that plaintiff's impairment does not meet the listing in 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 3.02–.03 (1991), which sets the criteria for disability due to asthma. The ALJ found that plaintiff's impairment did not meet the asthma listing due to the results of a pulmonary function test ("PFT") performed on July 30, 1988. For a person of plaintiff's height to be found disabled under the asthma listing, the one-second forced expiratory volume ("FEV 1") must be less than 1.0 and the maximum voluntary ventilation ("MVV") must be less than 40. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02(A) (1991). The test is to be repeated after the application of a bronchodilator[1] unless the pre-bron-

---

**1.** Bronchodilator: "1. Causing an increase in    caliber of a bronchus or bronchial tube. 2. An

chodilator values are 80% or more of the predicted normal values or the use of bronchodilators is contraindicated. *Id.* § 3.00(D). The July 30, 1988 PFT resulted in a FEV 1 of 1.311 and a MVV of 58. Although not required, a post-bronchodilator test was performed which indicated even higher results (FEV 1–1.718; MVV–78). Thus, plaintiff did not meet the listing.

Plaintiff objects to the fact that the ALJ declined to consider the results of two other PFT's performed on June 17, 1986 and November 21, 1987. The ALJ found that these tests were not relevant to the pertinent application for SSI dated May 25, 1988. It is unclear exactly why the ALJ found these tests to be irrelevant. However, it would be reasonable to give the latest test score the greatest weight since it would be the best indication of plaintiff's condition at the time of the hearing. In addition, even if all three test results are considered, plaintiff's position is not enhanced. Although the results of plaintiff's June 17, 1986 PFT met the listing (prebronchodilator: FEV 1–.71; MVV–21/postbronchodilator: FEV 1–1.11; MVV–30), the lab technician administering the test noted that "patient effort could have been better."

The second PFT, performed on November 21, 1987, produced postbronchodilator results that did not meet the listing (prebronchodilator: FEV 1–.995; MVV–36/postbronchodilator: FEV 1–1.266; MVV–49). Since the actual prebronchodilator results were less than 80% of the predicted results (69%), the application of a bronchodilator was prescribed, and the consideration of postbronchodilator results would be appropriate.

In determining that plaintiff did not meet the listing for asthma, the ALJ also considered the fact that plaintiff continued to smoke. Plaintiff contends that the ALJ's reasoning on this matter is faulty since plaintiff's addiction to cigarettes can only act to exacerbate her asthmatic condition. However, plaintiff overlooks two important points. First, the ALJ could have viewed plaintiff's continued use of cigarettes as an indication that plaintiff's condition is not as disabling as purported. A person with severe asthma would presumably have a limited ability and desire to continue smoking. Second, even if the ALJ's understanding of plaintiff's smoking habit is faulty, the PFT results discussed above, standing alone, constitute substantial evidence that plaintiff did not meet the listing for asthma. Since the listing is based solely on PFT results, and since plaintiff's results conclusively failed to meet the level required by the listing, these results alone were dispositive. The listing does not require or even suggest the consideration of any other factors. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 3.02–.03 (1991). Accordingly, it is evident that the ALJ's determination that plaintiff's condition did not meet the listing for asthma was based on substantial evidence.

### B.

The second issue to be addressed is whether substantial evidence supports the ALJ's finding that plaintiff has the residual functional capacity to perform substantial gainful employment. This issue is reached because of the ALJ's determination, at step four of the analysis, that plaintiff does not retain the residual functional capacity ("RFC") to perform past relevant work. This determination is uncontested by the parties. Plaintiff does, however, contest the ALJ's finding, under step five of the analysis, that there is a range of light work, involving lifting of up to ten pounds, which plaintiff could perform. Plaintiff was found limited by her inability to lift more than ten pounds and to work around dust, fumes or temperature extremes. The ALJ considered all of the medical evidence in making this determination. Plaintiff does not dispute the ALJ's subsequent finding, based on the vocational expert's testimony, that a significant number of jobs exist in the national economy which

agent that possesses this power." *Stedman's Medical Dictionary* 195 (5th Unabridged Lawyer's Edition 1982).

would be suitable for a person with such limitations.

Plaintiff chiefly challenges the ALJ's finding that plaintiff can lift ten pounds. The specific determination as to plaintiff's lifting ability is critical in this case since the vocational expert testified that no jobs existed in the national economy which were suitable for a person with plaintiff's limitations, if she were unable to lift more than five pounds. Thus, if the ALJ had determined that plaintiff's lifting capacity was limited to five pounds, as plaintiff contends, a finding of disabled would have been directed.

■ The only evidence in the record tending to establish that plaintiff could not lift ten pounds was plaintiff's own testimony.[2] Plaintiff claimed that back pain was the cause of this limitation. Normally, the claimant's subjective complaints of pain should be given great weight. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981). However, the ALJ must decide whether plaintiff's pain prevents her from engaging in substantial gainful activity. *Capoferri v. Harris*, 501 F.Supp. 32, 37 (E.D.Pa.1980), *aff'd* 649 F.2d 858 (3d Cir.1981). "While the ALJ must consider subjective symptoms, where he affirmatively addresses the issue in his decision, specifies his reasons for rejecting them, and where his conclusion is supported by the record, he is deemed to have discretion to reject a claim of disabling pain." *Id.* In addition, the ALJ is empowered to evaluate the credibility of all witnesses. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir.1983). Thus, the ALJ can reject plaintiff's subjective complaints on the basis that plaintiff is not credible, as long as the underlying reasoning for such a finding is explained and supported by the record.

■ The ALJ specifically rejected plaintiff's subjective complaints of pain, short-ness of breath and fatigue as being not credible. In her Hearing Decision, the ALJ questioned the credibility of plaintiff's testimony for the following reasons:

1) Although plaintiff informed one of her physicians that she still smoked, she testified that she had not smoked in two years.

2) Plaintiff testified that she only took over-the-counter pain medication and used moist heat to relieve her back pain.

3) Plaintiff testified that she can sometimes forget about her back pain.

4) Plaintiff has never been hospitalized for her alleged back problems, and has only been treated conservatively.

5) Plaintiff's hypertension is controlled.

6) Plaintiff's asthma attacks are treated at home.

In opposition to the ALJ's analysis, plaintiff makes two basic arguments. First, she contends that her subjective testimony should have been given more weight because it was corroborated by competent medical testimony. Second, she argues that the ALJ must contradict the plaintiff's subjective pain testimony with medical evidence and cannot simply infer nondisability from the frequency or mode of treatment. To support these propositions plaintiff relies on *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir.1983), where the court held that the ALJ's determination was not based on substantial evidence. In *Kent*, however, the ALJ's determination that the claimant's testimony of severe pain was not credible was based primarily on the claimant's "failure to have visited her physicians more frequently." *Id.* In addition, the ALJ "did not explain, except in the most conclusory terms", the reasons for his credibility judgments. *Id.* at 116. The case at bar can be distinguished from *Kent* in two respects. First, the ALJ's assessment of the credibility of plaintiff's pain testimony did not rely

---

2. Plaintiff states in the objection to the Magistrate's Report and Recommendation that Dr. John Sprandio, the Secretary's consultative examiner, "credited Ms. Duncan's statement that she has back pain if she lifts in excess of five pounds". *Id.* at 6. It should be noted that Dr. Sprandio's assessment that plaintiff could not lift more than five pounds was based solely on plaintiff's own representation that she could not lift a bag of groceries. Thus, Dr. Sprandio's "crediting" of plaintiff's testimony was not based on any independent medical evidence or any application of medical expertise. In addition, Dr. Sprandio's lay opinion as to the weight of a bag of groceries would appear to be, on average, a substantial underestimate.

solely or predominantly on the frequency or mode of treatment. It was proper for the ALJ to consider the facts that plaintiff took only over-the-counter medication, has been treated conservatively, and has never been hospitalized. *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986). The ALJ, however, also considered other facts such as plaintiff's misrepresentations concerning her smoking habits and her ability to sometimes forget about her pain. Second, as contrasted with *Kent*, the ALJ in this case set forth a reasoned basis for her opinion. All of the facts discussed above are clearly set forth in the ALJ's Hearing Decision. In short, the ALJ's determination that plaintiff could lift more than five pounds and, thus, could perform substantial gainful employment, was based on substantial evidence.

### C.

The final issue that must be addressed is whether plaintiff's October 8, 1987 application should have been considered reopened by the ALJ so that prior test results could be considered and disability determined as of October 8, 1987. An application for SSI disability benefits can be reopened if a request is submitted within 12 months. 20 C.F.R. § 416.1488 (1991). Plaintiff claims that although no formal request was submitted, plaintiff's representative requested reopening at the hearing. Plaintiff cites *Purter v. Heckler*, 771 F.2d 682, 695 (3d Cir.1985), for the proposition that there is no requirement that a formal petition be submitted for an earlier claim to be reopened. Although plaintiff is correct in this assertion, the outcome of this case remains unaffected. Even if plaintiff's October 8, 1987 application were considered open, the record reveals no additional evidence that would be beneficial to plaintiff's cause. As discussed above, the fact that the ALJ declined to consider the two prior PFT results did not affect the outcome as to disability due to asthma. In addition, plaintiff does not contend that the earlier application produced evidence of a critical nature relating to plaintiff's RFC.

### Conclusion

For the foregoing reasons, upon consideration of the parties' cross-motions for summary judgment and after review of the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi, plaintiff's objections thereto, and the entire record, IT IS ORDERED that:

1.  The Report and Recommendation is APPROVED.
2.  The defendant's motion for summary judgment is GRANTED.
3.  The plaintiff's motion for summary judgment is DENIED.