

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-13-2005

# Kelley v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3504

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Kelley v. Comm Social Security" (2005). *2005 Decisions.* Paper 851.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/851

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3504
_____

GERALDINE KELLEY,
            Appellant

vs.

JO ANNE BARNHART,
Commissioner of Social Security
            Appellee

_____

On Appeal from the United States District Court
for the District of New Jersey
Civil Action No. 02-3572
District Judge: Honorable John W. Bissell

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 27, 2005
_____

Before: SCIRICA, *Chief Judge*, ALITO and GARTH, *Circuit Judges*

(Opinion Filed: July 13, 2005)

_____

OPINION
_____

Garth, *Circuit Judge*:

Geraldine Kelley appeals from the final order of the United States District Court for the District of New Jersey, affirming the decision of the Commissioner of Social Security (the "Commissioner") to deny her claim for social security disability benefits. The Commissioner determined that Kelley had not established the existence of an impairment of the requisite severity and duration prior to the expiration of her insured status. Because we conclude that substantial evidence supports this determination, we will affirm the judgment of the District Court.

I.

As we write only for the benefit of the parties, we state only those matters essential to our limited discussion. A detailed account of the background of the case, including the relevant medical evidence, may be found in the District Court's opinion, *Kelley v. Comm'r of Soc. Sec.*, No. 02-3572 (D.N.J. June 30, 2004), from which we take the following facts.

Kelley applied for social security disability benefits in or around October 1994, alleging disability since March 15, 1980 due to bipolar illness. The Social Security Administration ("SSA") denied her application, both initially and upon reconsideration, finding insufficient evidence to document a disabling impairment for any period prior to June 30, 1984, the date Kelley was last insured for disability benefits. Kelley thereafter filed a timely request for de novo review before an Administrative Law Judge ("ALJ"),

repeating her claim of total and continuous disability since March 15, 1980. The ALJ found that Kelley suffered from a severe schizoaffective disorder and a severe obsessive compulsive disorder, but that she nonetheless retained the residual mental functional capacity to return to her past relevant work. As such, the ALJ concluded that Kelley was not under a "disability" as defined in the Social Security Act (the "Act") at any time through the date of his decision, which was rendered in August 1996.

On April 22, 1999, the Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ to give further consideration to Kelley's maximum residual functional capacity and to obtain evidence from a vocational expert to clarify the effect of the assessed limitations.[1] Upon remand, however, the ALJ went beyond these directives and reviewed Kelley's application anew. In a decision dated February 8, 2000, the ALJ concluded that Kelley did not have any documented impairment for a continuous period of not less than twelve months prior to the expiration of her insured status (June 30,

---

[1] The Appeals Council specifically instructed the ALJ to:

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 C.F.R. 404.1545 and Social Security Rulings 85-16 and 96-8p).

- Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566).

Order of Appeals Council dated April 22, 1999.

1984). Inasmuch as Kelley failed to meet the threshold burden of establishing a "severe impairment" prior to June 30, 1984, thereby defeating her claim for disability benefits, the ALJ found it unnecessary to reconsider its ruling regarding Kelley's residual functional capacity.

Kelley again sought Appeals Council review, but the Appeals Council concluded that there were no grounds for such review, which thus exhausted all administrative remedies and constituted the Commissioner's final ruling. Kelley then instituted the present action in federal court, challenging the Commissioner's final ruling denying her claim for benefits. The District Court affirmed the Commissioner's decision to deny benefits, finding that substantial evidence supported the ALJ's decision that Kelley was not continuously disabled prior to the expiration of her insured status.

This timely appeal followed.

II.

The District Court had jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's determination to deny benefits, and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of the ALJ's decision is limited to determining whether there is substantial evidence to support the decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Substantial

evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In order to establish a disability under the Social Security Act, a claimant must demonstrate that there is some "'medically determinable basis for an impairment that prevents him from engaging in any "substantial gainful activity" for a statutory twelve-month period.'" *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988) (quoting *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)); 42 U.S.C. § 423(d)(1)(A). A claimant is considered unable to engage in any substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

The SSA has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability. *See* 20 C.F.R. § 404.1520. Inasmuch as we have set forth each step in detail on prior occasions, *see, e.g., Burnett v. Comm'r Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000), we only summarize these steps to contextualize the issues raised in this appeal. The Commissioner inquires whether an applicant: (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe";

(3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)- (f).

III.

A critical determination here, on which there is no dispute, is that Kelley's insured status expired on June 30, 1984. "To receive disability insurance benefits pursuant to Title II of the Social Security Act, a claimant must show that he was insured under the program at the time of onset of his disability." *Kane v. Heckler*, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985) (citation omitted). Kelley was therefore required to demonstrate the existence of a mental impairment that precluded her from performing substantial gainful activity for a continuous period of twelve months prior to the expiration of her insured status. As we have indicated, the ALJ, upon remand from the Appeals Council, denied Kelley's claim for benefits at step two, finding that she did not have any documented impairment which lasted for a continuous period of not less than twelve months during the relevant time period. The sole question presented in this appeal, then, is whether the ALJ's step-two determination is supported by substantial evidence.

A.

Kelley challenges the ALJ's decision on several grounds, both procedural and substantive. Her substantive contentions may be reduced to two: (1) the ALJ's decision

-6-

ignored probative evidence (emphasizing the initial finding of the ALJ as to her illness, *see infra* III.B) and thus did not permit meaningful judicial review, in contravention of *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981) and its progeny; and (2) the ALJ was required to obtain the testimony of a medical advisor in determining the disability onset date, as established in *Walton v. Halter*, 243 F.3d 703 (3d Cir. 2001) and *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003). We address each of these contentions in turn.

In *Cotter*, we required the ALJ to provide an explanation of findings, including the reasons why probative evidence might have been discounted, so as to permit meaningful judicial review. 642 F.2d at 705. The problem with Kelley's argument here is that virtually no record evidence – medical or lay – supports her claim of disability prior to June 30, 1984. Kelley presented *no* objective medical evidence covering the period from March 15, 1980 to October 20, 1983, the first day Dr. Oliver-Smith, a treating physician, recorded a visit by Kelley. Notably, the last visit recorded by Dr. Oliver-Smith occurred just *seven* months later on May 11, 1984. Thus, the only probative objective medical evidence for the relevant time period consisted of certain office records from Dr. Oliver-Smith, covering a period less than the requisite twelve months. The record contains no further objective medical evidence until nearly eight years later. Moreover, as the District Court rightly noted, the records from Dr. Oliver-Smith, the only relevant contemporaneous medical evidence, are far from conclusive about the existence of a

disabling mental impairment. What these records suggest, rather, is that Kelley, with the assistance of anxiety medication, was able to engage in some gainful activity, evincing relatively minor impairments in social or occupational functioning.

While Dr. Oliver-Smith diagnosed Kelley with "severe obsessive compulsive disorder," nothing contained in his reports indicate that Kelley suffered from "severe obsessive compulsive disorder" for a continuous period of not less than twelve months. To the contrary, Dr. Oliver-Smith's notes indicate that Kelley sought out and obtained work during at least part of the time he was treating her. After reviewing these records and considering Kelley's testimony, the ALJ concluded that the objective findings for the period in question precluded a finding of disability as that term is defined by the Social Security Act.

We acknowledge that the lack of contemporaneous medical evidence of an objective nature is not necessarily determinative as to the onset date, and to the extent the ALJ's decision was based on a legal determination that the onset date of an impairment had to be proved by such medical evidence, it is erroneous. *See Newell*, 347 F.3d at 547. ("Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment."). Any such error, however, is harmless here, given the lack of non-medical or lay evidence supportive of Kelley's

claim.[2]  For instance, Charles and Joan Kelley, whose relationship to Kelley is not identified in the record but whom we presume to be Kelley's parents, stated in 1996 that they had observed the progression of Kelley's mental illness "over the past years."  It is at least unclear whether "over the past years" refers to a period twelve years earlier, *i.e.,* on or before June 30, 1984.  In addition, Kelley's brother, Gene, provided a list of behavioral problems he had observed from 1984 to 1992.  He reported only that she began washing her hands constantly in *early 1985*, at least six months after her insured status expired.  And finally, Kelley's husband, William Eldridge, noted some behavior problems after he married Kelley, but admitted that it was not until "about 1986 [that Kelley] began to have a problem with dirt."  He also acknowledged that after the birth of their son in 1980 (the year Kelley alleged she became disabled), they had "relative peace for a few years."

We are satisfied, based upon a careful review of the objective medical records and the lay evidence relating to the claimed period of disability, that virtually nothing in the record supports Kelley's claim of a disabling impairment prior to June 30, 1984.  This case, therefore, does not present the situation, addressed in *Cotter*, where probative

---

[2] We note that the non-contemporaneous medical evidence presented by Kelley is not supportive of her claim.  For instance, in a Psychiatric/Admission Note from Fair Oaks Hospital dated May 4, 1992, it states that "Patient denies history of previous psychiatric treatment or hospitalization except for periods of 'stress' for which she was treated with Valium."  The report also states, "Patient denies any history of significant prior medical disorders."

Moreover, in *Newell*, we noted that the lack of contemporaneous medical evidence was not dispositive where the claimant provides an adequate explanation for the failure to seek regular medical treatment for the time in question.  347 F.3d at 547.  Here, Kelley offers no explanation as to why she refrained from seeking regular medical treatment for the period in question.

evidence is not credited or simply ignored. *Cotter*, 642 F.3d at 706-07.

Kelley also argues that the ALJ was required to consult a medical advisor, relying on two decisions – *Walton* and *Newell* – subsequently decided by this Court after the ALJ issued his decision in February 2000. We disagree. In *Walton*, we held that the ALJ must call upon the services of a medical advisor where the alleged impairment was a slowly progressing one, the alleged onset date was far in the past, and adequate medical records for the most relevant period were not available." 243 F.3d at 709; *see also Newell*, 347 F.3d at 549. Here, the fact is that both the objective medical records and lay evidence tend to *disprove* Kelley's claim of disability prior to June 30, 1984. Under these circumstances, the ALJ was not required to obtain the assistance of a medical advisor to help him infer the onset date. Kelley's reliance on *Walton* and *Newell* is therefore misplaced.

B.

Kelley also focuses on certain procedural peculiarities at the administrative level. She argues that the ALJ's subsequent decision in February 2000 abandoned, without justification, his own prior factual findings, findings that were also confirmed by the Appeals Council. In particular, Kelley contends that the ALJ's decision of August 1996 and the Appeals Council's order of April 22, 1999 both definitively established that she suffered severe impairments prior to the expiration of her last insured date. A careful look at these decisions, however, shows that Kelley is mistaken.

-10-

In the 1996 decision, the ALJ found that "[t]he medical evidence establishes that the claimant has a severe schizoaffective disorder and an obsessive compulsive disorder . . ." As the Commissioner points out, nothing in the ALJ's finding, written as it was in the present tense, specifically refers to Kelley's impairments *prior to the expiration of her insured status*. To the contrary, the ALJ concluded that Kelley had not been "continuously and uninterruptedly disabled from March 15, 1980 to [August 26, 1996]." We adopt the reasoning of the District Court here:

> Because the only medical evidence the ALJ reviewed dating back to the early 1980s indicated that Plaintiff was merely "treated for anxiety and severe obsessive compulsive disorder[,]" [Kelley's] current position that the ALJ concluded that [Kelley] suffered from "severe schizoaffective disorder and a severe obsessive compulsive disorder" in the 1980s in incorrect.

*Kelley v. Comm'r of Soc. Sec.*, No. 02-3572 (D.N.J. June 30, 2004), at 19.

Nor are we impressed by Kelley's contention that the Appeals Council's remand order definitively decided that she suffered 'severe mental impairments documented throughout the record' prior to the expiration of insured status. Contrary to Kelley's characterization, the Appeals Council's remand order excludes any mention of the "prior insured status" language. It is evident that the Appeals Council merely restated the ALJ's finding, which, as we have stated, makes no mention of Kelley's disability prior to the expiration of her insured status.

Upon remand, the ALJ reformulated the issue to reflect the relevant time period, a crucial determination that he seemingly ignored in his first decision. In doing so,

however, the ALJ merely reaffirmed the prior decisions of the SSA, which held that Kelley's "condition was not disabling on any date through June 30, 1984, when [she was] last insured for disability benefits." For these reasons, we cannot agree with Kelley that either the ALJ or the Appeals Council inappropriately retracted certain findings of fact.

Finally, Kelley argues that the ALJ ignored the directives from the Appeals Council to re-evaluate her residual functional capacity. In effect, the Appeals Council directed the ALJ to reassess his step-four determination. Instead, the ALJ reformulated the issue, properly recognizing that the "issue[] to be decided [is] whether the claimant was under a "disability" from her alleged onset date of March 15, 1980 and on or prior to June 30, 1984[.]" By making this distinction, the ALJ found Kelley not disabled at the second step of the sequential evaluation process. We find it significant that, upon request for review of the ALJ's decision, the Appeals Council found no basis for granting the request, notwithstanding the ALJ's revised findings.

IV.

For the foregoing reasons, we hold that substantial evidence supports the ALJ's decision. Accordingly, we will affirm the judgment of the District Court.